

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXANDER CARABALLO, *ET AL* | No 07 C 2807 |
| Consolidated with | |
| DEBORAH H. ALVAREZ, *ET AL* | No. 06 C 4639 |
| Plaintiffs | |
| v. | The Honorable William J. Hibbler |
| CITY OF CHICAGO, a Municipal Corporation, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

The Court presides over these consolidated FLSA claims in which City of Chicago Fire Department personnel claim the City improperly calculated the overtime that they worked. The Plaintiffs in one of the cases, 07-C-2807, move for summary judgment. The Defendant moves for summary judgment against these Plaintiffs.

### I. Procedural History

Before delving into the facts underlying the parties' respective motions, the Court must briefly recount the procedural history of this litigation. From the outset, the parties have made the litigation far more complex than it need be. Each frequently shifts its respective position on the relationship of the *Alvarez* Plaintiffs and the *Caraballo* Plaintiffs depending on the procedural advantages present at a particular point in time. The mercurial quality of the parties' positions has led to an unstable procedural quagmire on which the Court's opinions must be based.

Just two days after filing suit on behalf of the *Alvarez* Plaintiffs (06-C-4639), counsel for the Plaintiffs began distributing a notice to potential class members that the Court had yet to approve and that counsel had yet to share with Defendant. Within a week, the Plaintiffs had filed 64 notices of consent based upon the unapproved notices. Defendant objected to the Plaintiffs' proposed opt-in period and to Plaintiffs' practice of distributing notice to potential class members prior to sharing the notice with Defendant.

The Court approved a revised notice approximately two weeks after the *Alvarez* suit was filed and provided counsel for the Plaintiffs 60 days to obtain the consent of any class members who wished to participate in the collective action. Even after the deadline for filing the notice of consent had passed, counsel for the Plaintiffs continued to file such notices, prompting Defendant to move to dismiss those Plaintiffs whose notices were untimely filed. The Court dismissed without prejudice some of the Plaintiffs whose notices were untimely filed.

A few of those dismissed Plaintiffs refiled their claims, joined by additional Plaintiffs, launching the *Caraballo* action, 07-C-2807. In an ironic reversal of positions, Defendant, who had recently objected to the presence of the *Caraballo* Plaintiffs in the *Alvarez* action, moved to consolidate. Plaintiffs, who had recently opposed the separation of some of the *Caraballo* Plaintiffs from the *Alvarez* action, opposed the motion to consolidate. In other words, both parties reversed course. The Court ordered the cases to be consolidated.

As the consolidated cases proceeded through discovery, the parties continued their propensity to shift positions. In November 2007, the *Caraballo* Plaintiffs, who most recently had opposed the joining of the *Alvarez* and *Caraballo* Plaintiffs, moved to have the Court determine Defendant's liability through five representative Plaintiffs, one of whom was a Plaintiff in the *Caraballo* action.

Not surprisingly, Defendant opposed Plaintiffs' motion. Now, on this motion for summary judgment, Plaintiffs and Defendant reverse course yet again, with Plaintiffs suggesting the Court should decide the merits only of the *Caraballo* Plaintiffs and Defendant suggesting the Court rule on the entirety of the claims, though both parties agree the Court's ruling with regard to the *Caraballo* Plaintiffs will impact the *Alvarez* Plaintiffs.

At the end of the day, the *Alvarez* and *Caraballo* Plaintiffs are not in distinguishable positions, other than the timeliness of their claims (the *Alvarez* Plaintiffs seek to recover for FLSA violations dating to August 1, 2004, and the *Caraballo* Plaintiffs seek to recover for violations dating to April 1, 2005). The cases have been consolidated, and Plaintiffs recently asked the Court to determine Defendant's liability in both cases using representative plaintiffs, employing representatives from both the *Alvarez* and the *Caraballo* cohorts. It makes little sense for the Court to duplicate its efforts, and the Court's reasoning here shall apply in equal effect to the *Alvarez* Plaintiffs.

## II. Factual Background

All of the *Alvarez* and *Caraballo* Plaintiffs are employees of the Chicago Fire Department in the Emergency Medical Services (EMS) division. The Plaintiffs are union members and a Collective Bargaining Agreement governs the terms of their employment. (Def. Ex. 17). The CBA contains a grievance arbitration procedure. (Def. Ex. 17, Art. X).

Count I of the Plaintiffs' complaints allege generally that the City violated the Fair Labor Standards Act by not paying them at the "appropriate rate for all hours worked in excess of 40 during certain work weeks." (Alvarez Compl. at ¶ 5; Caraballo Compl. at ¶ 5). Count II of the Plaintiffs' complaints allege that the City's violation was willful. (Alvarez Compl. at ¶ 13; Caraballo Compl. at 13).

Plaintiffs' claims, however, are not so simple as a mere failure to track the number of overtime hours worked and compensate the Plaintiffs for that time, although that is one of their claims. In addition to simple mathematical errors, Plaintiffs claim the City did not properly calculate the Plaintiffs' weekly regular rate, and these claims can be divided into three categories: 1) by omitting certain pay enhancements; 2) by including certain credits against Plaintiffs' FLSA overtime; and 3) by employing an improper method to calculate Plaintiffs' regular rates. The first category of Plaintiffs' subclaims includes claims that allege the City failed to include all required remuneration when calculating the paramedics' weekly regular rate, omitting the following: a) Duty Available Pay; b) Uniform Pay; c) Fitness Pay; d) Specialty Pay; e) Acting Pay; or f) Drive Pay. The second category of subclaims includes two credits taken by the City that Plaintiffs argue are improper: a) credits against Plaintiffs' FLSA overtime for the pay the Plaintiffs received for working additional shifts; and b) credits against the Plaintiffs' FLSA overtime for Continuing Education Pay. Thus, all told, the Plaintiffs allege the City violated the FLSA in ten distinct ways.

Not every Plaintiff claims an individual right to relief for each of the ten subclaims. The City argues that only three subclaims are common to all of the *Alvarez* and *Caraballo* Plaintiffs, the Plaintiffs argue that five subclaims are common to all *Caraballo* Plaintiffs. (Def. St. ¶ 12; *Caraballo* Pl. Resp. To Def. St. ¶ 12).[1] For example, only 2 of 12 *Caraballo* Plaintiffs assert an individual claim

---

[1] In support, the City points to the Plaintiffs' responses to its requests to admit, specifically to four paragraphs. Two of those four paragraphs establish that not every Plaintiff claims a right to Driving Pay or Acting Pay. (Def. St. Exs. 4-5 ¶¶ 21-22). A third paragraph establishes that not every Plaintiff addressed any human errors (which, ironically, is not one of the claims the City suggests is diverse). (Def. Exs. 4-5 ¶¶ 19). The final paragraph the Defendants point the Court to establishes only that not every Plaintiff grieved its disputes with the City, which does nothing to establish the heterogeneity of Plaintiffs' claims. (Def. Exs. 4-5 ¶¶ 28).

For their part, Plaintiffs admit that at least five subclaims are not common to all Plaintiffs

for Specialty Pay. (Def. St. ¶ 33). Only 7 of 12 *Caraballo* Plaintiffs assert an individual claim for Fitness Pay. (Def. St. ¶ 38). Only 9 of 12 *Caraballo* Plaintiffs assert an individual claim for Acting Pay. (Def. St. ¶ 40).[2] Only 6 of 12 *Caraballo* Plaintiffs assert an individual claim for Driving Pay. (Def. St. ¶ 43).[3] At least one *Caraballo* Plaintiff may not assert an individual claim for an improper credit for Continuing Education Pay. (Kosmoski St. ¶ 43). The City also points out that 341 of 382 *Alvarez* Plaintiffs made no attempt to alert the City to any inadvertent human error resulting in an inaccurate overtime calculation prior to filing this lawsuit. (Def. St. ¶ 64). Despite purporting to pursue a collective action until the filing of the instant motion, the *Caraballo* Plaintiffs each submit individual

---

(those for Specialty Pay, Fitness Pay, Driving Pay, Acting Pay, and human error). The Plaintiffs argue that five subclaims are common to all Plaintiffs (Duty Pay, Uniform Pay, Improper Credits for Additional Shifts, Improper Credits for Continuing Education, and Improper Method for Calculating Overtime Pay). Plaintiffs, however, point to absolutely nothing in the record to support their argument. Of course, it is elementary that in responding to a motion for summary judgment, it is not sufficient merely to deny a statement of fact. A party must point to some evidence in the record to provide evidentiary support for its assertions of fact. *AA Sales & Assoc., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 612 (7th Cir. 2008) (summary judgment is the point of the case where the parties must "put up or shut up").

In short, despite the parties submission of voluminous summary judgment materials, *neither* supports its assertions on this central fact. Thus, the Court is forced to scour the record itself, which is not its responsibility. *Argyropoulus v. City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008). In sifting through the summary judgment materials, however, the Court has attempted to resolve the dispute. Plaintiffs' assertion that all *Caraballo* Plaintiffs assert an individual claim based upon the City's taking an improper credit for working additional shifts is incorrect. (Pl. Response to Def. St. ¶ 12; Pl. Hubley St. ¶ 42). It is not entirely clear whether Plaintiffs' assertion that all of the *Caraballo* Plaintiffs assert an individual claim based upon the City's taking an improper credit for Continuing Education Pay is correct. Plaintiff Kenneth Kosmoski begins his statement of fact regarding this claim with a statement that he "makes no statement." (Kosmoski St. ¶ 43). Shortly thereafter, Kosmoski lists overtime paid for Continuing Education Pay. (Kosmoski St. ¶¶ 44-45).

[2] In addition, only 176 of 382 of the *Alvarez* Plaintiffs assert an individual claim for Acting Pay. (Def. Ex. 4).

[3] In addition, only 183 of 382 of the *Alvarez* Plaintiffs assert an individual claim for Driving Pay. (Def. Ex. 4).

statements of fact, frequently indicating that the individual Plaintiff makes no statement regarding a certain subclaim. (Def. St. ¶ 13; Pl. Individual Sts.).

### III. Analysis

Initially, the City argues that under the Seventh Circuit's decision in *Jonites v. Exelon Corporation*, 522 F.3d 721, the heterogeneity of Plaintiffs proposed class and the availability of arbitration pursuant to the CBA requires them to pursue their claims through the CBA's arbitration provision.

Shortly before the parties filed the cross-motions for summary judgment, the Seventh Circuit issued *Jonites v. Exelon Corporation*. 522 F.3d 721 (7th Cir. 2008). In *Jonites*, the Seventh Circuit addressed the FLSA claims of a thousand lineman who worked for Commonwealth Edison. *Jonites*, 522 F.3d at 722. The lineman argued that Commonwealth Edison violated their rights under the FLSA by: 1) the way it implemented its "call out" program, where employees not on duty were called to duty; and 2) forcing them to work during the lunch break. *Id.* The district court ruled that the call-out program did not violate the FLSA and that the only remedy for the lunch duty claim was arbitration pursuant to a collective bargaining agreement. *Id.*

The Seventh Circuit observed that the Supreme Court had held that "'a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination' *might* be enforceable . . . provided it was 'explicit.'" *Id.* at 725 (quoting *Wright v. Universal Maritime Serv. Corp.*, 522 U.S. 70, 80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998)) (emphasis in original). The Seventh Circuit reasoned that the Supreme Court's holding in *Wright* applied to other statutory rights. *Id.* The court noted, however, that a general waiver binding employees to resolve "any dispute or difference" arising from a CBA is not an "explicit" waiver of rights under the FLSA. *Id.* In other words,

employees' consent to allow a union to represent them for bargaining purposes is not the equivalent of consent to have the union waive individual statutory rights. *Id.*

The mere fact that a general waiver did not create an exclusive remedy in a CBA's arbitration procedure did not end the court's inquiry. The court noted that the workers argued that "because some Com Ed employees may sometimes do some work at lunch, all Com Ed employees are entitled to pay during their lunch break;" an argument it described as preposterous. *Id.*; *see also Leahy v. City of Chicago*, 96 F.3d 228, 232 (7th Cir. 1996) (resolving against police officers' claim that all meal periods are compensable simply because some officers worked during meal periods). The court described the prospective class, which included workers with no conceivable mealtime claim, as "hopelessly heterogeneous." *Jonites*, 522 F.3d at 726. The court observed that the plaintiffs had been unwilling to file individual suits under the FLSA and also unwilling to create homogenous classes in order to maintain a FLSA class action. *Id.* citing 29 U.S.C. § 216(b). Consequently, the court held that the CBA's arbitration procedure was the plaintiffs' only recourse even though the CBA did not contain an explicit waiver of rights under the FLSA. *Id.*

The general arbitration provision in the Plaintiffs' CBA is similar to the one at issue in *Jonites* and is not an explicit waiver that serves as an absolute bar to the Plaintiffs' ability to bring their claims in federal court. There remains, however, *Jonites*'s proscription of heterogeneous classes, which the Court must examine more closely. Among the *Caraballo* Plaintiffs, who number only 12, the Plaintiffs bring diverse sets of subclaims. Moreover, each *Caraballo* Plaintiff submitted a separate statement of material fact. So far as the Court is able to ascertain, there are 8 distinct patterns of subclaims brought

7

by the 12 *Caraballo* Plaintiffs.[4] The *Caraballo* Plaintiffs subclaims are so complex that even the Plaintiffs themselves made errors in describing them. If 382 *Alvarez* Plaintiffs are added to the mix, the complexity and diversity of patterns of subclaims only increases.

The Plaintiffs insist that the reasoning set forth in *Jonites* does not apply. They first argue that the *Caraballo* Plaintiffs proceed as individuals and the *Alvarez* Plaintiffs proceed as a single homogenous class. As noted earlier, the reason why the *Caraballo* Plaintiffs are separated from the *Alvarez* Plaintiffs is not because the *Caraballo* Plaintiffs opted to pursue their claims individually, but because the *Caraballo* Plaintiffs blew the deadline for opting in to the *Alvarez* class. Moreover, just before filing the motion for summary judgment, one of the *Caraballo* Plaintiffs put himself forward to be a representative plaintiff in a joint motion to determine liability through representative plaintiffs. In denying that motion, the Court noted that it followed the two-step approach for determining whether class treatment is proper in an FLSA action and that the Court had conditionally certified the cases to proceed as representative actions. The Court further noted that discovery might very well reveal that the policies that allegedly violated the FLSA might affect very few of the potential class members. The Plaintiffs attempt to reverse course in order to escape from under the holding of *Jonites* is not convincing.

Next, the Plaintiffs argue that *Jonites* does not require them to grieve their claims through the CBA's arbitration procedure. *Jonites* does not go so far as to hold that CBAs preempt FLSA rights (as

---

[4] For simplicity, the Court employs the alphabetical identification of claims by the City in Paragraph 12 of its statement of fact. Plaintiffs Dokey, Lewis, and Winiecki bring subclaims a,c,d,e,f,g,h,i, & j. Plaintiffs Kaveney, Pullano, and Rysztogi bring subclaims a,d,f,g,h,i, & j. Plaintiff Caraballo brings subclaims a,d,g,h,i, & j. Plaintiff DiSalvo brings subclaims a,d,e,f,g,h,i, & j. Plaintiff Hubley brings subclaims a,c,d,e,f,h,i, & j. Plaintiff Jamison brings subclaims a,b,c,d,f,g,h,i, & j. Plaintiff Kosmoski brings subclaims a,c,d,g,i,j, & possibly h. Plaintiff Wheatley brings subclaims a,b,c,d,g,h,i, & j.

Defendant suggests that it does). *See* Def. Reply at 1. In *Jonites*, the court noted that a CBA merely creates an alternate remedy if a group of heterogeneous plaintiffs chose to bring a collective action. *Jonites*, 522 F.3d at 726. Under *Jonites*, a group of Plaintiffs seeking to bring FLSA claims, thus has three options: 1) pursue their claims in individual actions; 2) create a homogenous class; or 3) ask the union to grieve their claims pursuant to the CBA. *Id.*

Finally, Plaintiffs protest that arbitration is unfair because the CBA gives the arbitrator "nothing to interpret but federal law." *See* Pl. Reply at 3. The Seventh Circuit rejected this concern in *Jonites*, observing that the union "will be able to insist . . . that the arbitrator comply with the Fair Labor Standards Act" and, if the arbitrator does not, request that the courts set aside the decision for manifest disregard of the law. *Jonites*, 522 F.3d at 726. In fact, the Seventh Circuit concluded that the arbitrator might be better suited to interpret the intersection of the CBA with the FLSA than a court. *Id.* ("arbitrator is likely to have a better understanding of the meaning of "work" in the context of a specific bargaining relationship than a court would have . . . and so if the statutory and contractual standards are identical, the arbitrator's decision is entitled to consideration in a follow-on FLSA case).

If the Plaintiffs' class is heterogeneous, *Jonites* and the two-step procedure followed in this District for certifying collective actions under § 216(b) require the Court to decertify the class and allow it to send their claims to the arbitrator pursuant to the CBA. *Jonites*, 522 F.3d at 726; *Mielke v. Laidlaw Transport, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). In *Mielke*, the court set forth several factors to determine whether the proposed opt-in claimants were similarly situated: (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns. *Mielke*, 313 F. Supp. at 762. The Plaintiffs sent an opt-in

notice that defined the class broadly: to include all City of Chicago paramedics who believe the City did not properly compensate them for hours worked in excess of 40. The prospective Plaintiffs are not, however, "similarly situated" victims of a *single* unlawful policy — such as a refusal to pay minimum wage or failure to pay overtime. Rather, the Plaintiffs claim their overtime rate was improperly calculated, based upon *multiple* allegedly unlawful policies. Thus, the question for the Court is whether the Plaintiffs' presentation of ten distinct subclaims, which are not common among all of the Plaintiffs, renders the class heterogeneous.

With regard to the first two factors listed in *Mielke*, courts are reluctant to certify a class where liability depends upon an individual examination of each individual's job. For instance, where employees work at different locations and under different collective bargaining arrangements, class certification is not appropriate. *Mielke*, 313 F. Supp. 2d at 763 (citing *Ray v. Motel 6 Operating, Ltd. P'Ship*, No 3-95-828, 1996 WL 938231 at *4 (D. Minn., Mar. 18, 1996)); *Bunyan v. Spectrum Brands, Inc.*, 07-CV-089-MJR, 2008 WL 2959932 (S.D. Ill. Jul. 31, 2008) (declining to certify collective action where prospective plaintiffs had disparate job responsibilities and duties). In these cases, courts examine whether the disparity in job duties affects an employee's membership in the proposed collective action. *See, e.g., Bunyan v. Spectrum Brands, Inc.*, 07-CV-089-MJR, 2008 WL 2959932 (S.D. Ill. Jul. 31, 2008); *Clausman v. Nortel Networks, Inc.*, IP 02-0400-C-M/S, 2003 WL 21314065 (S.D. Ind. May 1, 2003); *Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000). Disparities in the damages claimed by representative parties and other class members generally do not warrant decertification. *Fravel v. County of Lake*, No.2:07-cv-253, 2008 WL 2704744 (N.D. Ind. Jul. 7, 2008).

Here, the disparities among the Plaintiffs' job duties and employment settings do not speak to their eligibility in the class. The City does not contest that any particular Plaintiff would be ineligible for overtime pay under the FLSA (because his job description excludes him from certain FLSA protections, for example) or that any individualized affirmative defenses exist. Nor does the City contend that its liability to any particular Plaintiff on any given subclaim turns upon anything other than a single uniform policy and whether that policy impacted the particular Plaintiff. In other words, theoretically, every Plaintiff could recover upon all of the subclaims *if* each Plaintiff presented proof of damages for each subclaim.

There remains, however, the third factor listed in *Mielke*. In essence, in evaluating the procedural concerns attenuated in the collective action, the Court must weigh whether the proposed sub-class approach is more efficient than other methods of resolving the litigation. The *Fravel* court conditionally certified a collective action with four subclaims to proceed as a collective action, holding that the sub-class approach was more efficient than four separate collective actions (each with just a single subclaim) or over a hundred individual actions. *Fravel*, 2008 WL 2704744 at *3. The court hinted that bifurcation and designation of subclasses might aid it in making individualized fact determinations. *Id.* (quoting *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 at *3 (E.D. Pa. Apr. 4, 2008).

Here the Court is not as sure. As noted earlier, eight subclasses exist among just the 12 *Caraballo* Plaintiffs. Moreover, the Plaintiffs pursuit of the 10 subclaims are so varied, that even in preparing this motion, the Plaintiffs lost track of the subclaims presented by the 12 *Caraballo* Plaintiffs (insisting that all 12 pursue a subclaim for working additional shifts, when Plaintiff Hubley does not). The summary judgment materials for the *Caraballo* Plaintiffs include 65 paragraphs of fact for each

Plaintiff and more than 15 pages of bates-stamped pages of documentary evidence for each Plaintiff. Assuming this to be the standard, Plaintiffs would produce more than 25,000 statements of fact and nearly 6,000 pages of bates-stamped materials for the entire class — or, in the alternative, require the Court to presume similarities in the subclaims among individual Plaintiffs, a presumption that has been proven to be unfounded. Sorting through the morass, particularly when the attorney's have not proven diligent in pointing the Court to the relevant parts of the record, would be an enormous tax upon judicial resources. Such an enormous effort would defeat the very purpose of a collective action in the first place: mainly, to promote judicial economy. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008) (observing that using a class action to unwind hundreds or thousands of various individual transactions is neither economical nor efficient).

In this case, arbitration provides an alternative both to burdensome collective actions, where the Court must wade through each individual Plaintiff to assess whether he or she has a valid claim on 10 separate subclaims, or to individual actions, where the possible recovery might be too small for any particular Plaintiff to pursue. The Court therefore finds that issues of fairness and procedure suggest that the Plaintiffs are not similarly situated.

The Plaintiffs in these FLSA cases bring numerous disparate constellations of subclaims. Even among the 12 *Caraballo* Plaintiffs, the subclaims brought by each Plaintiff are diverse. The Court finds the reasoning in *Jonites* to apply. The Plaintiff class here is made hopelessly heterogeneous by the use of subclaims, some of which are brought by under 20% of the proposed class. The disparate subclaims brought by the Plaintiffs would be better served proceeding through arbitration. The City's Motion for Summary Judgment is GRANTED. As noted earlier, the Court's ruling on the heterogeneity of the *Caraballo* class shall apply equally to the *Alvarez* Plaintiffs. The *Alvarez* and *Caraballo* Plaintiffs are

dismissed without prejudice so that they may pursue their claims through the CBA's arbitration provision.

IT IS SO ORDERED.

3/18/09
Dated

Hon. William J. Hibbler
United States District Court